Good morning, everyone. Our first case this morning is Appeal No. 24-3239, Hyatt Hotel Corporations v. the Commissioner of the Internal Revenue Service. Ms. Sherry. Good morning, Your Honors, and may it please the Court, Melissa R. Basheri here on behalf of Hyatt. I'd like to reserve four minutes of my time for rebuttal, and I will try to watch the clock. This appeal presents three issues. The first is the claim of right doctrine. The second is what the tax court called the trust fund doctrine, and the third is the trading stamp method. I'll start with claim of right because that is dispositive here, but I want to be sure to spend time on the trading stamp method because resolution of that issue is particularly important to Hyatt and other taxpayers, and so whatever the court decides on claim of right or trust fund, we'd ask that it reach that issue. But we can't, right? I mean, it'd just be an advisory opinion if we did, wouldn't it? I don't think it would. I think it'd more be in the nature of an alternative holding. I think district courts pretty often will say, we agree with you on the first point, but even if we're wrong about that, we agree with you on the second or third or fourth point. I think it'd be more in that nature. Now, I'll fully acknowledge that the court doesn't have to reach the issue, but I think there's really good reasons to do so because if this tax court decision stays on the books, it's going to govern Hyatt going forward because the tax court will likely adhere to it as precedent, and there are a number of other taxpayers that use the trading stamp method we cite to the Hilton example in footnote seven of our opening brief. At the very least, we'd ask that the court vacate the decision so it doesn't act as controlling precedent going forward. If we decide in your favor on the claim of right doctrine, don't we have to remand for the tax court to take a pass at it? I don't think you do because the commissioner does not make an argument on appeal that if claim of right is a doctrine of exclusion, that Hyatt has exercised the claim of right in this case. If you look at that portion of their- I don't think it has to, does it? I think it does. Our argument that we made in the opening brief was not only that the claim of right doctrine applied, but that we satisfied its prerequisites here. Then in the answering brief, the entire section on claim of right is focused on this threshold question as whether it can be used to exclude. It doesn't include any argument there that if we're right on that threshold legal issue that we haven't satisfied, we haven't shown that Hyatt did not exercise the claim of right here. I think that issue is waived. The trust fund part of it, I think, is a little bit of a different question because they did make arguments with respect to trust fund, both the first prong and the second prong. I think when it comes to claim of right, if you look at that first Roman in their brief, there's no argument whatsoever that it wouldn't apply here to exclude income if in fact it's a doctrine of exclusion. Why wouldn't we just apply Indianapolis power and light to this case? I think you absolutely can. I think Indianapolis power and light, as well as the Illinois power decision out of this court four years prior that's cited in that decision, is directly on point here and is a dispositive answer to their argument, which is that it can't be used as a doctrine of exclusion. If you look at Indianapolis power and light, what the court says is there's different formulations. It mentions the claim of right doctrine as one formulation and then it applies it as well as the Glenshaw Glass formulation to show that the payments there should not be treated as income. In other words, should be excluded. I don't think they have a particularly good answer or really any answer to that case, to the Illinois power case, which used it in 1986 as a doctrine of exclusion as well. If we apply Indianapolis power and light, what exists of the trust fund doctrine? It basically returns to its origin. If you look at the trust ... I hesitate to call it a trust fund doctrine. I know that's what the tax court called it, but if you look at the origin story starting with 7-Up and broadcast measurement back in 1950 and 1951, it wasn't a separate doctrine. It was just taking claim of right and applying it to trust fund like tax. It cited the North American oil decision in both of those cases. In fact, many years later in Illinois power, the court cited back to broadcast measurement as an example of the claim of right doctrine being applied to exclude income. Even if you look at the intervening cases in the tax court that deal with claim of right in the trust fund context, they weren't necessarily deviating from the claim of right doctrine in case after case after case in the 70s and 80s. These are courts looking at it and saying it's not income in these circumstances. The Flores case, the Ford case, the Shochet case in the 80s, even the affiliated fund case, the Fifth Circuit reversed and said it's not income. It's hard to find a case where the tax court has applied the claim of right, whether called trust fund doctrine or otherwise, and concluded that it should count as income. I think they cite one case, Likes, that did that in 1999, and then otherwise you're going back to this Crimco case in 1951. I think the trust fund doctrine just becomes claim of right applied in the trust fund context. Since you've gone through that litany of cases, let me see where you situate this. You've got James, the Supreme Court, has this footnote. This is 1961. It says it specifically declines to address whether the claim of right doctrine was valid as a test of whether a certain receipt constitutes income. There you have the Supreme Court explicitly saying, we're not addressing that question. We're not using this doctrine. It's really a doctrine of when, when something becomes income, not whether something becomes income. With all the cases you just named, can you name a case where the court then went back to resolve that question that it specifically declined to resolve in James? Yes. Indianapolis Power is that case. It applied the claim of right doctrine to exclude income. But even if you look at James itself, I know what you're talking about, footnote 7. In James itself, when it articulated a refined version of the claim of right doctrine, it specifically said, this will exclude loans. We're purposely defining it this way so it will exclude loans. Loans cannot be treated as income. That's a whether question. That's not a when question. If you look at Indianapolis Power, if you look at this court's case in Illinois Power, that's a whether question as well. I know what footnote you're talking about. I think it's a little bit confusing given what James goes on to say in text about loans. But even if there's some confusion coming out of James, Indianapolis Power, Illinois Power, I believe, answered that question. I think the other thing to look about in terms of their position that it can't be a means of exclusion, what other definition of income are they offering the court to look at except for this trust fund doctrine? If you look at Glenshaw's Glass formulation, any other formulation, they're all really getting to the same point. That's what the Supreme Court was talking about in Indianapolis Power. I'm not sure. I'm not sure that there's that much space between the claim of right doctrine and the trust fund doctrine because I think in Indianapolis Power light, the court discusses benefits. They're pretty clear about that. I think they do this benefits analysis, but I think what they say is they're not that important. Companies don't take loans without expecting to reap some benefit from the loan. A hauling company doesn't take $100,000 loan to buy two dump trucks to not make money. They make $1 million a year on the dump trucks. That doesn't mean that the $100,000 loan is income to them because they benefited from it in some way. The Indianapolis Power and Light, the Supreme Court says, no, that doesn't make any difference to us. I think that's exactly the point. I think that's where in this case, the trust fund doctrine morphed into something it was never meant to be because it focused on benefit, essentially said, any benefit sort of transforms this into income or at least anything that's not de minimis. I think Indianapolis Power and Light is clear that any economic benefit is not the test because of course there's always a benefit. If we agree with you on that, how can we decide this in a matter of first instance? I think what your argument is, claim of right doctrine applies, but even if the claim of right doctrine doesn't apply and we apply some form of the trust fund doctrine, the tax court didn't pass on the claim of right either. The only thing we have to evaluate from the tax court is its benefits analysis. Don't we have to give the tax court, don't we have to tell the tax court in the first instance to decide whether to apply the proper test? I think you don't have to for the waiver reason I already said, but also because if you look at the claim of right doctrine as articulated in the Supreme Court case law, the first question is whether or not it is being exercised under a claim of right. In other words, whether it is being exercised in a way where you're treating the property as your own. I don't think there's any dispute on this record or in this case that Hyatt did not treat the property as its own. It treated as collectively owned by hotel owners and there's certainly no argument in the briefs to that effect. Now, if the court does not want to touch on the facts or sort of accept the waiver for what it is on appeal, then it certainly can send it back for the tax court to look at it. As you know, the tax court didn't reach the first prong, but I think on this record, the answer is really quite clear. It was limited to program related purposes on its face. There is document after document, statement after statement where Hyatt said, this is collectively owned by the hotel owners. We're acting as a trustee, we're acting as an agent, we're acting as a fiduciary with all the fiduciary duties that come with it, and we can only use it for the benefit of or on behalf of the hotel owners. Is there a difference between the income that is Hyatt Corporation versus the third party hotel, you know, hoteliers or the owners of the third party hotels? In other words, why is the Hyatt, Hyatt Corporation, I stay at a Hyatt Regency hotel and it's owned by Hyatt. Why is Hyatt not just deferring income? And maybe your answer is that's permitted under the trading stamp method. Well, I definitely want to get to trading stamp. The hotels that are owned by Hyatt are treating their proportionate share of the fund as their income, and I think that's another place where the tax court went wrong because it focused on the percentage. At the time that it's paid to the hotel or at the time the trust fund or the fund pays it? You know, at the time the customer pays it or at the time the fund pays it? So, at the time that the Hyatt-owned hotels make a contribution to the fund, they do not deduct it from their income. They treat it as essentially moving their income from one account to another. They don't treat it as a taxable event. And so, Hyatt is taxed on the Hyatt-owned hotel's proportion of the income. And then do they not tax it when they pay it from the fund back to the hotel? They treat it as income. The exact tax consequences, I think, get a little bit complicated, but I don't think there's any dispute that the Hyatt-owned hotels treat the money that's going into the fund as their income. Where the tax court went wrong is it then put Hyatt on the hook, not just for the Hyatt-owned hotels, but for third-party hotels who get a benefit and, you know, where it's essentially income for them. And so, I think that was another, you know, critical flaw in the tax court's decision. But I think that is a good transition maybe to do the trading stamp method because other hotel chains like Hilton don't do what Hyatt did, which is really carefully use it only for program-related purposes. They have the money that's available. They can use it for general corporate purposes. They use the trading stamp method to deduct future redemptions. And the tax court additionally said, well, you can't do that either, even if it's income to you. You can't do that for one reason and one reason only, which is the tax court concluded that other property was limited to tangible property, and it did so by applying the canon of a eustem generis. That I realize I am way into my rebuttal time. I can cover this in rebuttal, and I don't want to completely lose that time. Why don't you cover it in rebuttal? Okay, thank you. Thank you. Okay, we'll now hear from Mr. Kumar. Good morning, your honors. My name is Nishant Kumar. I represent the commissioner, and let's start with the claim of right doctrine and why it has nothing to do with this case. As we said in the brief, the claim of right doctrine is a doctrine of inclusion. That can't be right under Indianapolis Power and Light. Can you explain to me, Indianapolis Power and Light case was an exclusion case. That's what it was. Is your argument that they didn't ... You really don't address this in your brief at all, regarding Indianapolis Power and Light. Is your suggestion that Indianapolis Power and Light is not an exclusion case or that Indianapolis Power and Light did not apply the claim of right doctrine? How do you- Sure. How do you wrestle with Indianapolis Power and Light? I think the parties moved beyond the work that the claim of right doctrine. The parties started here in Indianapolis Power and Light with the common ... This is what the court said. They started with this common ground that the power company acknowledges that the customer deposits are taxable as income upon receipt. If they constitute advanced payments, the commissioner on his part concedes that the deposits are not taxable income if they have to be returned. This is all turning on whether the deposits are basically loans. Like we were saying, the claim of right doctrine only has purchase when- What do you do at this sentence? When the Supreme Court says, this court has stated, when a taxpayer acquires earnings lawfully or unlawfully without the consensual recognition expressed or implied of an obligation to repay and without restrictions as to their disposition, he has received income. Sure. I say that's a if but not an only if statement. What it's saying is we know for sure that taxpayer has received income because those conditions are satisfied. We are not saying those are the only conditions under which we could determine that if those conditions were not present, therefore, the inverse is true. I'm with you there. The Supreme Court then goes on to apply that principle and exclude the income from Indianapolis Power and Light. Because they determined, the Supreme Court focuses on whether these deposits are loans. We think the claim of right doctrine is basically taking the broadest, the Glenshaw Glass definition of income and saying when there is a definite repayment obligation as there are in loans, what we're saying is that money does not meet, the taxpayer does not have complete dominion over that money because of the repayment obligation. Why shouldn't we just apply those same principles in this case, no matter what we call it? In Indianapolis Power and Light, the court dealt with benefits and they said not very important. Third, you talk about benefits, you take along my example with the dump trucks. They also said any deposit unclaimed after seven years was to a sheet to the state. So the Indianapolis Power and Light didn't keep the money and I think Hyatt is saying under its rules or under its application of the PAC code, they can do the exact same thing with an accrual method of depreciation of points. So in other words, if someone, a hotel pays into the funds for points that person A earns, person A dies and never uses their points, Hyatt is already accounting for that in their tax treatment of the points. So in other words, they don't weep any benefit from the points at the end of the day by like zeroing them out and not ever paying tax on certain money. So we think all the claimant rights, we think what you have here, probably the clearest way to see it is the principle of the dog that didn't bark. So we've talked about a case in which the Supreme Court's applying the claimant right doctrine, Indianapolis Power, you also got Scali Oil, you've got the foundational case of Burnett, then you have Seventh Circuit cases like Bates Transportation. They all involve the circumstance that is calling into question the taxpayer's, quote, complete dominion over the funds and therefore whether their funds are income is the looming prospect of either repayment or dispute about their entitlement to begin with, like in the North American Oil Co. Here, there is no dispute. There's no looming prospect that Hyatt is going to have to return these funds to anyone. That's not the aspect of... Why not? I mean, it seems to be a very simple proposition as to what Hyatt is saying is a factual matter. An individual stays at their hotels, they pay money to stay at the hotel. The hotel takes a specific portion of that money, a small proportion, puts it into a fund, which is later used to reimburse the same hotel or a different hotel when a person redeems their points. Why is that not exactly like a loan? Well, I guess... It just seems to me as a very simple proposition that that's what they're doing. What concerns me about the tax court decision is the tax court focused almost exclusively on benefits and said Hyatt benefited in all these various ways. The problem that I see with that is what the Supreme Court did in Indiana's power of light. It said, look, of course a company benefits from a loan. We expect them to benefit. It is capitalism. And the tax court says, oh no, because they benefited from this, it counts as income. I'd say it's two things. Because they benefited from it and because there is no question of them having to return... There is no dispute over their entitlement or their ability to retain the money. That's not the... What do you mean there's no dispute? Are you saying that Hyatt agrees that they're able to retain the money forever? There's no... I guess I'd say, Your Honor, if that's the way they're invoking the claim of right doctrine to say essentially the money is on loan to them and is otherwise going to be paid back to the hotel owners, for one, that wouldn't cover any part of the program funds that aren't used exclusively for reimbursement to the TPHOs. Everything else in the fund would not meet that sort of characterization of being money on loan and they never go and divide it up. But isn't that exactly what happens in Indianapolis Power & Light in this respect? The Supreme Court says in Indianapolis Power & Light, customer pays into a trust fund. I guess banks do this all the time. Customer pays into a trust fund. Indianapolis Power & Light earns interest on that money that they never pay to the customer. They retain that and they pay tax on that interest. And the Supreme Court basically says, so what? We don't care about that. It doesn't matter because they're going to pay the money back to the Indiana Power & Light. It doesn't matter because of this certain repayment obligation. I mean, we think that's a crosscut. But isn't there a certain repayment obligation here? Because unless you're saying that Hyatt is not... I mean, as a factual matter, you may be saying Hyatt is not in fact paying the third party hotel owners for the stays when the points are redeemed. I thought the way that Hyatt was trying to use the claim of right doctrine was not by invoking the prospect of having to return the funds. It wasn't saying these are loans and that's why. They're saying our use of it is not unrestricted. I think you're onto something there. Factually, we have a different matter factually from Illinois Power & Light. For example, you were just discussing the exclusive, what Judge Kerr says is the exclusive use returning to the third party hotel owners, but that's not... We don't have an exclusive use of the funds in that way. Isn't part of what you've been drawing our attention to in the briefs, they use some of the funds for advertising, for example, that redounds to the benefit of Hyatt Corporation as a whole, not simply each individual third party owner. Are there facts here that are fundamentally different about Hyatt's use of the money that we need to think about as a court? Sure. I think that gets to whether if we agree the trust fund doctrine is governing, that is why Hyatt doesn't qualify under the trust fund doctrine because of the extent of its threshold level. If I could just take one more pass at why we think it's clear the claim of right doctrine is not what it's essentially being turned into here, which is an all purpose fulcrum point in any tax case for what is or is not income. We think that's a huge metastasis of the doctrine and here are a few reasons why. One, it's the phrasing of the doctrine itself. It says, if the taxpayer meets claim of right unrestricted use, then, this is Burnett, he has received income which he is required to report even though it may still be claimed he is not entitled to retain the money. Then you have, like we said, the principle of the dog that didn't bark and we think every case, if you look at what the through line of all cases, it's a dispute over whether the money that is sitting with the taxpayer, whether the taxpayer is entitled to that money or has to turn that all back over. Mr. Kumar, can I ask you a different question based on Judge Jackson's question? It's a good question. If we decide that the tax court should have either applied the claim of right test or the first prong of the trust fund doctrine, should we remand to the tax court for the tax court to do that or is that something that we can decide for ourselves on this record? I suppose if the court found that the claim of right doctrine is an independent ground for exclusion, then you should remand it to the tax court because the tax court at the outset said the claim of right doctrine cannot be used that way so we're not even going to look at it that way. If we look at what the court said in Indianapolis Power and Light, I'm going to paraphrase, when a taxpayer acquires earnings without an obligation to repay and without restriction as to their disposition, he has received income. The tax court never passed on whether or not Hyatt has acquired earnings without an obligation to repay and without restriction to their disposition. The tax court focused almost exclusively on benefits. Yes, Your Honor, I think the tax court saw it as I've been proposing, which there isn't really an obligation to reap. I'm not exactly how the tax court saw it, to tell you the truth, because the tax court just basically said, I think the trust fund, he uses the word we, I don't know why, but I use, I'm going to use I, I think the trust fund doctrine is a better fit than the claim of right doctrine, so I'm going to apply the trust fund doctrine. Well, the claim of right doctrine, though, if you apply it in that way, it's ignoring the broader formulations of, I think what we have to start with is how have the courts defined income, and they haven't always defined it as using claim of right terms, right? There's Glen Shaw, accession to wealth clearly realized over which the taxpayer has complete dominion. What we're saying is the claim of right doctrine fills in where the complete dominion is called into question because of a repayment obligation. It says notwithstanding that, but I guess if I could turn quickly to the trading stamp method. Before you do, Mr. Kumar, let me ask you what I asked Ms. Sherry. If I were to understand claim of right, you've got your basic overarching definition of income, and then claim of right comes in as a question of when something constitutes income because it says if, blah, blah, blah, but if you understand that if is once. Once someone gets income with no restriction. So claim of right answers the question of when these earnings constitute income, but then we get to trust fund doctrine on these facts or any facts in the cases we have before us. That's a question of whether something, whether earnings constitute income. If I looked at it that way, why would I be wrong? No, you would be right, Your Honor. I mean, I think the treatise, one of the treatises, suggests in some cases it's not just a when, it's also a whether it's income to begin with. Where does it say that in the Supreme Court jurisprudence? I understand you point to a treatise, but point to the Supreme Court opinion that says that. Well, we just think it would be incommensurate with the Supreme Court decisions in the language in James and Glenshaw that broadly describe income. Indianapolis Power and Light was decided 30 years after James. Sure, but we don't think it was implicitly overruling the broad, broad definition of what is income set forth in tax code section 61 and then Glenshaw and James. We think it was describing when a particular form of uncertainty gets resolved against the tax. But then they apply it in Indianapolis Power and Light. They apply the principle from James to exclude income. You have to agree that Indianapolis Power and Light is an exclusion case. It's not an inclusion case. They exclude income, right? Yes, I agree to that, Your Honor. So that means the doctrine would apply as a doctrine of exclusion, not simply as a doctrine of inclusion. It has to. Otherwise, we'd just be ignoring Indianapolis Power and Light. I can't speak further to that, Your Honor. I think I know why. May I have a minute on the trading stamp method? Sure, and Ms. Sherry will give you some extra time. So go ahead. Okay, thank you. I think it comes down to whether the justum generis is called for than whether you can carry out the analysis, i.e. whether there's a readily discerned characteristic common to merchandise and cash, and then whether, even if you can do all that, it creates some sort of other interpretive problem, cuts against some other interpretive canon. Here, we'd say to the first question, is this an occasion that calls for justum generis? We'd say clearly yes, because you kind of have the textbook particular one, particular two, or catch all, where the catch all literally read would swallow particular one and particular two, and the other property is, in fact, the textbook example, if you're talking about Scalia and Garner in the textbook, as the catch all that invites, at least gets a justum generis, a justum generis is foot in the door. Then the question becomes, can it do the work we need it to, which is, is there a readily discerned characteristic? And we just think the term cash, the tangibility is clearly at your fingertips descriptor of cash that you would say even if not every instantiation of cash is tangible. All right, Mr. Kuhlmeier, I think we'll leave it there. Thank you. Thank you. Okay, Ms. Sherry, we'll give you your four minutes. Thank you, your honors. I'll start with the trading stamp method since I didn't get to touch on it. There's two key reasons why the canon of a justum generis doesn't apply here. The first is where my colleague left off. There has to be an attribute that's common to all of the preceding specific terms. That's the Southwest v. Saxon decision out of the Supreme Court. This court's fairly recent decision in Citizens Insurance, the Pipefitters decision out of this court, and the Harrison decision out of the Supreme Court are unequivocal that even if there's in the prior terms, you can't apply a common attribute that isn't present, unequivocally present with both terms. And as I think I heard my colleague recognize, we think cash is best thought of as intangible property, not tangible property. Does that only work if you use these dictionaries and other understandings that are more modern than when the term was introduced? No, the dictionary definitions they use from 1969, 1972, if you look at the addendum, pages 13 and 25, for example, include things like bank deposits, money, or its equivalent. And there's ample case law, the Oakley case from this court that explains that cash is generally thought of as intangible. But even if there's any ambiguity, whether sometimes it might be tangible, sometimes it might not, that's not enough to invoke the canon. In Southwest, for example, there is an argument that maybe railroad workers are ambiguous, and you can say it's just those that are on the train. And the court said, once there's ambiguity, that's the end of the canon. It is not permissible to use the use of generous in that respect. The second point is you can't use it to subvert the purpose. The regulatory purpose, all agree, is to match revenues and expenses. There is no reason why tangible and intangible property is different in that respect. It would be completely arbitrary to say that if Hyatt only gave a voucher and said, here's a paper voucher, you can exchange it for a hotel stay, that suddenly it would be included within the property. That would be what they would have to do, right? Pay for the hotel and then we'll send you a check. We'll send you a check. And that makes no sense in terms of the regulatory purpose or otherwise. And so it doesn't apply here. We think the court should address it no matter what, but certainly if it's thinking of sending the case back to the tax court for anything, there would be very good reasons to address it and to vacate this portion of the decision. What were you trying to argue when you told us that when they overhauled the trading stamp regulation, it went from 200 words to 2,000 words? I saw the proposition there, but there was no follow-up. I don't understand what the import of your argument is. It was just to address their argument. So they have some speculation that the reason other property was added in 1972 was because there was maybe some lack of clarity on what merchandise meant. And this was all about adding trading stamp companies to the regulation. But ultimately, and adding all those additional words, it did add trading stamp, but all of the additional words are really spent on how you figure out future redemptions. So our point is you can look at the regulatory history. You won't see any explanation as to why other property was added. And you certainly won't see the explanation that they proffered to this court. There were multiple reasons why they ultimately amended it. And there's nothing in there suggesting they added other property just to deal with goods in the hands of trading stamp companies. So that was the only reason we pointed to that. If I could go back just really quickly in the last 40 seconds, the point is they now seem to say, OK, maybe under Indianapolis power and light, you can use a claim of right to exclude loans, but it's a loans-only doctrine. Number one, if you look at A37, the tax court said, if this fund dissolves, the money all goes back to the hotel owners. It does not go to Hyatt. So it's A37, indisputable that the money doesn't go to Hyatt. It goes back to the hotel owners. Just like it went to the state. Exactly. And secondly, it's not just about loans. If you look at the Bitford Treatise that they rely on, number three in their list of places where this applies is trust conduits. Hyatt is acting as a conduit. It's acting as a trustee. And so in addition to the loan context, the claim of right doctrine has direct application in the trust. That's why it was used in the early trust fund cases in 1950 and 1951. And then can I answer your question on ads or? Sure. OK. Just a quick answer as far as the ads. These are program-related advertising. If you look at the trust fund cases starting with 7-Up, those are all advertising funds. So the fact that it was used for advertising doesn't distinguish it from the other trust fund cases. And the key is the advertising dollars are spent in order to increase hotel stays, to increase hotel revenue, which directly benefits the hotel owners and only indirectly benefits Hyatt through whatever percentage of fees they get. And even the tax court recognized that at page 28 of the appendix, saying that those kind of management fees are exactly the kind of secondary benefits that 7-Up recognized do not count. OK. Thank you, thank you, Mr. Kumar, in the case we've taken under advisement.